IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JANICE DAVIDOW, individually and o/b/o others similarly situated<br>Plaintiff,<br><br>vs.<br><br>H&R BLOCK, INC., et al.,<br><br>Defendants. | Case No. 18-01022-CV-W-ODS |

<u>ORDER AND OPINION (1) GRANTING DEFENDANTS' MOTION TO COMPEL
ARBITRATION ON AN INDIVIDUAL BASIS, (2) GRANTING IN PART AND DENYING
IN PART PLAINTIFF'S MOTION TO STRIKE REPLY OR FOR LEAVE TO FILE
SUR-REPLY, AND (3) STAYING THE MATTER PENDING ARBITRATION</u>

Pending are Defendants' Motion to Compel Arbitration on an Individual Basis (Doc. #20), and Plaintiff's Motion to Disregard/Strike, or in the Alterative, for Leave to File Sur-Reply (Doc. #36). For the following reasons, Defendants' motion is granted, and Plaintiff's motion is granted in part and denied in part.

## I. BACKGROUND[1]

During the 2012 and 2013 tax seasons, Plaintiff Janice Davidow worked as a seasonal tax preparer for "H&R Block" in Florida. In December 2018, Plaintiff filed this putative class action against Defendants H&R Block, Inc. and H&R Block Tax Services LLC, alleging Defendants, along with other entities and persons, "enacted a scheme related to the recruitment of employees and potential employees, which included policies and agreements not to solicit or recruit without prior approval [from] each other's personnel." Doc. #1, ¶ 17. According to Plaintiff, the franchise agreement between Defendants and their franchisees included a restriction on competition: "During the term of this agreement, neither Franchisee nor any of Franchisee's Associates will, without H&R Block's prior written consent…[s]olicit for employment any person who is

---

[1] Unless otherwise noted, information in this section was taken from Plaintiff's Complaint. Doc. #1.

employed by H&R Block or by any other franchisee of H&R Block." *Id.* ¶¶ 18, 36-40. Defendants adhered to the same agreement in company-owned stores. *Id.* ¶¶ 19, 41. Among other things, Plaintiff alleges the "purpose and effect of this scheme was to limit and suppress mobility and compensation for class members." *Id.* ¶¶ 20-21, 66-74. Plaintiff alleges Defendants violated the Sherman Act.

Defendants move to compel arbitration on an individual basis. Doc. #22. They argue that, in November 2011 ("2011 agreement") and in November 2012 ("2012 agreement"), Plaintiff agreed to arbitrate all claims against H&R Block companies when she signed her tax professional employment agreements. Doc. #21-2, at 4-6; Dco. #21-3, at 5-7. The 2011 agreement contains the following relevant provisions:

> 19. a) Associate and the Company agree that any Covered Claims (defined below) will be resolved by final and binding arbitration…governed by the Federal Arbitration Act (FAA) and the laws of the State of Missouri to the extent Missouri law is not inconsistent with the FAA.
>
> * * * *
>
> b) Covered Claims. Except for the Excluded Claims (defined below), Covered Claims include any and all claims or disputes between Associate and the Company, or the Company's parents, subsidiaries, affiliates, predecessors, and successor corporations and business entities, and its and their officers, directors, employees, and agents, including but not limited to claims and disputes arising out of or in any way related to Associate's hiring or recruitment, this Agreement, Associate's employment, compensation, benefits, and terms and conditions of employment with the Company, or the termination thereof, including but not limited to contract, tort, defamation and other common law claims, wage and hour claims, statutory discrimination, harassment, and retaliation claims, and claims arising under or relating to any federal, state or local constitution, statute or regulation, including, without limitation, the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized.
>
> c) The following claims and disputes are not subject to the arbitration agreement set forth in this Agreement: (i) applications for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, (ii) claims arising under, relating to or in connection with an employee benefit plan subject to the Employee

2

Retirement Income Security Act of 1974 ("ERISA"), which shall be determined in accordance with the claims and dispute resolution procedures set forth in the applicable ERISA plan documents, (iii) claims for workers' compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation benefits, (iv) claims for unemployment compensation benefits, (v) claims within the jurisdiction of the National Labor Relations Board ("NLRB"), and (vi) any claim that is expressly precluded from arbitration by a federal statute or regulation. Nothing in this Agreement shall prohibit Associate from filing a charge or complaint with the U.S. Equal Employment Opportunity Commission, the NLRB, the U.S. Department of Labor, the Occupational Safety and Health Commission, any other federal, state, or local administrative agency; however, any Covered Claim that is not resolved through the federal, state, or local agency proceedings must be submitted to arbitration in accordance with this Agreement, except for claims within the jurisdiction of the NLRB and where expressly precluded by a federal statute or regulation. Associate also has the right to challenge the validity of the terms and conditions of this Agreement on any grounds that may exist in law and equity, and the Company shall not discipline, discharge, or engage in any retaliatory actions against Associate in the event Associate chooses to do so or engage in other protected legal activity. The Company, however, reserves the right to enforce the terms and conditions of this Agreement in any appropriate forum.

**d) ASSOCIATE AND THE COMPANY AGREE THAT NO COVERED CLAIMS MAY BE INITIATED OR MAINTAINED ON A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION BASIS EITHER IN COURT OR IN ARBITRATION, AND THAT ASSOCIATE IS NOT ENTITLED TO SERVE OR PARTICIPATE AS A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION MEMBER, OR RECEIVE ANY RECOVERY FROM A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION INVOLVING COVERED CLAIMS EITHER IN COURT OR IN ARBITRATION.**

* * * *

21. Associate may opt-out of (reject) Section 19 by submitting a signed written statement that Associate wishes to opt-out and not be subject to section 19 of this Agreement. In order to be effective, the written statement must include Associate's full name, address, and employee ID number, and must be submitted to **H&R Block – Legal Department, Attention: Arbitration Opt-Out, One H&R Block Way, Kansas City, Missouri 64105** within thirty (30) days of Associate's signing of this Agreement. Associate's written opt-out will override Associate's signature below regarding arbitration, but no other provision of this Agreement. Any

associate choosing to opt-out will not be subject to any adverse employment action as a consequence of that decision.[2]

\* \* \* \*

**By checking the relevant box on the previous web page (the Contract section of the Automated Hiring Process), you are indicating your agreement to the above terms and condition, including but not limited to the Arbitration agreement and Waiver in Section 19. Checking the box on the previous web page will serve as your electronic signature. Once you have checked that box, a signature[,] date and confirmation code will display in this document, below.**

Doc. #21-2, at 4-6 (emphasis in original). The 2012 agreement is similar to the 2011 agreement provisions noted above. There are a few minor differences: (1) the arbitration provision does not refer to Missouri law but a separate provision in the agreement – paragraph 17 – indicates the agreement is governed by Missouri law; (2) the opt-out paragraph is numbered 20 (instead of 21); and (3) in the paragraph immediately preceding the signature space, it refers to "checking the sign and submit button" (instead of "checking the relevant box") and "checking the button" (instead of "checking the box"). Doc. #21-3, at 5-7.

Plaintiff filed her opposition to Defendants' motion (Doc. #33), and Defendants filed their reply (Doc. #34). Plaintiff moved to strike Defendants' reply, or in the alternative, allow her to file a sur-reply. Doc. #36. Both motions are now fully briefed.

## II.   DEFENDANTS' MOTION TO COMPEL ARBITRATION

Whether parties agreed to arbitrate disputes is a question for judicial determination. *Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 740-41 (8th Cir. 2014) (citation omitted). A court's role is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004); *see also Int'l Bhd. of Elec. Workers v. Hope Elec. Corp.*, 380 F.3d 1084, 1098-99 (8th Cir. 2004). This is because arbitration is a matter of consent. Absent an enforceable agreement to arbitrate a particular dispute, neither party can compel arbitration of that dispute. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010); *Bank of*

---
[2] Plaintiff did not exercise her right to opt-out of either agreement. Doc. #21-1, at 4.

*Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 911 (8th Cir. 2010) (quoting *Berkley v. Dillard's Inc.,* 450 F.3d 775, 777 (8th Cir. 2006)). State law must be applied to determine if a binding agreement exists. *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629-31 (2009); *Bank of Am.*, 618 F.3d at 911. The parties agreed Missouri law governed their agreements. Doc. #21-2, at 4; Doc. #21-3, at 5; Doc. #33.

Under Missouri law, the party seeking to compel arbitration bears the burden of proving a valid and enforceable arbitration agreement exists. *LoRoad, LLC v. Glob. Expedition Vehicles, LLC*, 787 F.3d 923, 927 (8th Cir. 2015) (citing *Baier v. Darden Rests.*, 420 S.W.3d 733, 737 (Mo. Ct. App. 2014)). Defendants contend a valid and enforceable arbitration agreement exists, and the claims alleged by Plaintiff are covered by the arbitration agreement. Plaintiff contends a valid arbitration agreement does not exist because (1) the agreement lacks consideration, and (2) Defendants are not parties to the agreement.

### A. Whether a Valid Arbitration Agreement Exists

Sufficient consideration may be a promise to do (or refrain from doing) something or may be a transfer or relinquishment of something of value to the other party.[3] *Sniezek v. Kan. City Chiefs Football Club*, 402 S.W.3d 580, 583 (Mo. Ct. App. 2013) (citation omitted). If a contract contains mutual promises imposing a legal duty or liability on each party as a promise to the other party, the contract is a bilateral contract with sufficient consideration. *Id*. A court may look to the contract's language, as well as the practical effects of the contract's provisions to determine whether the parties are mutually obligated such that sufficient consideration exists. *Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 688 (Mo. Ct. App. 2015) (citations omitted).

In the agreements, Plaintiff and "the Company agree that any Covered Claims… will be resolved by final and binding arbitration…." Doc. #21-2, at 4; Doc. #21-3, at 5. The arbitration agreement "applies with respect to all Covered Claims, whether initiated by [Plaintiff] or the Company." Doc. #21-2, at 4; Doc. #21-3, at 5. "Covered Claims include any and all claims or disputes between [Plaintiff] and the Company, or the

---

[3] Plaintiff does not argue there was no offer or acceptance, ostensibly waiving those arguments.

5

Company's parents, subsidiaries, affiliates, predecessors, and successor corporations and its business entities…." Doc. #21-2, at 4; Doc. #21-3, at 5. The express terms include mutual obligations and agreements to arbitrate claims, supporting Defendants' argument that sufficient consideration exists. *See Franklin v. Cracker Barrel Old Country Store*, No. 4:17-CV-289, 2017 WL 7691757, at *5 (E.D. Mo. Apr. 12, 2017) (citing Missouri and federal cases holding mutual agreements between an employer and employee to arbitrate claims are sufficiently supported by consideration).

Plaintiff contends the agreements do "not contain mutual promises of arbitration" because the agreements "specifically exempt[] the claims an employer is more likely to bring, including claims for injunctive relief." Doc. #33, at 8-9. Plaintiff refers to the claims specifically excluded from arbitration: (1) applications for injunctive relief in aid of arbitration or for maintenance of the status quo pending arbitration; (2) ERISA claims; (3) workers compensation benefits claims (but not retaliation claims arising out of or relating to workers compensation benefits); (4) unemployment compensation benefits claims; (5) claims within the National Labor Relations Board's jurisdiction; and (6) any claim expressly precluded from arbitration by federal statute or regulation. Doc. #21-2, at 5; Doc. #21-3, at 6.

Plaintiff cites two cases to support her position. Both cases are distinguishable. In *Goolsby v. PrimeFlight Aviation Services, Inc.*, the parties' agreement exempted from arbitration remedies or claims that only the defendant would bring against the plaintiff – such as, "seeking injunctive or declaratory relief due to allegations of unfair competition, unfair business practices, the unauthorized disclosure of trade secrets or confidential information, or the breach of covenants restricting the business activities of the Company or employees." No. 5:17-CV-06069-SRB, 2017 WL 4570826, at *4 (W.D. Mo. Aug. 9, 2017). The Court observed "the claims enumerated as arbitrable" are claims only the plaintiff would bring against the defendant – e.g., claims for unpaid wages, overtime, discrimination, retaliation, breach of contract, employment-related tort claims, and claims applicable to the employment-relationship. *Id.* at *4. Because the practical effect of the agreement only bound the plaintiff to arbitration, the Court found the defendant's promise to arbitrate was illusory and the agreement lacked mutuality of promise; thus, the agreement lacked consideration. *Id.* at *4-5.

In *Jimenez v. Cintas Corp.*, the parties agreed to arbitrate certain disputes and exclude other claims from arbitration – to wit, unemployment and workers compensation claims, and charges and complaints filed with administrative agencies. 475 S.W.3d at 686-88. Also excluded from arbitration were violations of a non-compete provision. *Id.* However, only the defendant was permitted to seek a declaratory judgment or injunctive relief with a court to enforce the plaintiff's compliance with the non-compete provision. *Id.* at 682, 687. Because the agreement required the plaintiff to arbitrate all claims but allowed the defendant to seek redress from the courts for "claims it is most likely to bring against [the plaintiff]," the Court found the agreement lacked mutuality of promise and was devoid of consideration. *Id.* at 685-89.[4] Thus, no valid arbitration agreement existed. *Id.* at 688-89 (citations omitted).

Similar to *Goolsby* and *Jimenez*, Plaintiff and Defendants agreed to resolve certain claims in arbitration, regardless of whether the claim is brought by Plaintiff or Defendants. Doc. #21-2, at 4-5; Doc. #21-3, at 5. But the similarities end there. The parties agreed arbitrable claims included, for example, claims arising out of Plaintiff's employment, benefits, and compensation; contract, tort, defamation, and other common law claims; statutory discrimination, harassment, and retaliation claims; and claims arising under federal, state or local constitution, statute or regulation. Doc. #21-2, at 4-5; Doc. #21-3, at 5. While most of the arbitrable claims would likely be brought by Plaintiff, several of the arbitrable claims (e.g., contract, common law claims, "claims arising under federal, state or local constitution, statute or regulation") could be brought by Defendants. The parties also agreed certain claims would be excluded from arbitration, and those claims could be brought by Plaintiff or Defendants. Doc. #21-2, at 5; Doc. #21-3, at 6. Unlike *Goolsby*, the arbitrable claims are not limited to claims only Plaintiff would bring against Defendants. And in contrast to both *Goolsby* and *Jimenez*, the claims excluded from arbitration are not limited to claims only Defendants could or would bring against Plaintiff.

---

[4] The Court found exempting charges of discrimination, unemployment benefit claims, and workers compensation claims from arbitration was not consideration because the law compels the exemption or vests exclusive jurisdiction for these claims with administrative tribunals. 475 S.W.3d at 688 n.6.

Based upon the foregoing, the Court finds the practical effect of the parties' agreement does not bind only Plaintiff to arbitration and does not exclude only Defendants from arbitrating certain claims. Therefore, there is mutuality of promise, and sufficient consideration exists. The Court finds a valid arbitration agreement exists.

## B. Whether Nonsignatories May Compel Arbitration

In both agreements, Plaintiff assented to arbitration of "any and all claims and disputes between Associate and the Company, or the Company's parents, subsidiaries, affiliates, predecessors, and successor corporations and business entities…." Doc. #21-2, at 4; Doc. #21-3, at 5. The two agreements were "made between" and signed by Plaintiff and H&R Block Eastern Enterprises. Doc. #21-2, at 2, 6; Doc. #21-3, at 2, 7. Defendants are nonsignatories to the arbitration agreements but they seek to enforce them.

"[A] nonsignatory may compel a signatory to arbitrate claims in limited circumstances." *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010) (citations omitted). The parties agree that whether an arbitration agreement is enforceable by a nonsignatory is determined by traditional principles of state law. Doc. #34, at 8; Doc. #36-1, at 3. Nonsignatories are permitted to compel arbitration when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration" would avoid evisceration of the underlying arbitration agreement. *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798-99 (8th Cir. 2005) (citations omitted); *see also PRM Energy Sys.*, 592 F.3d at 834-36; *see also Barton Enters., Inc. v. Cardinal Health, Inc.*, No. 4:10-CV-324, 2010 WL 2132744, at *3 (E.D. Mo. May 27, 2010) (citations omitted). The "close relationship" includes the parent-subsidiary and franchisor-franchisee relationships. *PRM Energy Sys.*, 592 F.3d at 835-36; *CD Partners*, 424 F.3d at 798-800; *Barton Enters.*, 2010 WL 2132744, at *3-4.

Defendant H&R Block, Inc. "is a holding company that is the ultimate parent entity to other separate, legally-distinct entities in the H&R Block corporate family." Doc. #35, at 2. Defendant H&R Block, Inc. is H&R Block Eastern Enterprises's "indirect parent company." *Id.* Defendant H&R Block Tax Services LLC is an "affiliate of H&R

8

Block Eastern Enterprises." *Id.* Because Plaintiff expressly agreed to arbitrate her claims against H&R Block Eastern Enterprises's "parents, subsidiaries, affiliates," she agreed to arbitrate her claims against Defendants. Thus, Defendants are permitted to compel arbitration so long as the arbitration agreement encompasses the disputes at issue, which will be discussed *infra*.

In an attempt to circumvent her agreement to arbitrate claims against H&R Eastern Enterprises's "parents, subsidiaries, affiliates," Plaintiff argues the agreements do not define what entities are "parents, subsidiaries, affiliates," and therefore, Defendants cannot compel arbitration. Doc. #36-1, at 6. The agreements do not explicitly identify what entities are "parents, subsidiaries, affiliates" of H&R Block Eastern Enterprises. But the agreements recognize the affiliation between Defendants and H&R Block Eastern Enterprises, as well as a relationship between Plaintiff and Defendants.

First, Plaintiff agreed to abide by the rules and requirements H&R Block, Inc. She agreed to perform her job duties in compliance with "H&R Block, Inc. Code of Business Ethics & Conduct." Doc. #21-2, at 2; Doc. #21-3, at 2. She acknowledged her employment could be terminated by violating "H&R Block, Inc. Code of Business Ethics & Conduct," and a "material violation of….H&R Block Inc. Code of Business Ethics & Conduct" would constitute "cause" for termination of her employment. Doc. #21-2, at 2; Doc. #21-3, at 2-3.

Second, Plaintiff also agreed she would be "given access to Trade Secrets and other Confidential Business Information which has commercial value to the Company and its affiliates (hereinafter together referred to as 'H&R Block')." Doc. #21-3, at 3; Doc. #21-2, at 2-3 (referring to "Block" instead of "H&R Block"). The Confidential Business Information includes, but is not limited to "H&R Block's client lists, information pertaining to H&R Block's clients, employee lists and information, and H&R Block's preparation software." Doc. #21-3, at 3; Doc. #21-2, at 2-3.

Third, to opt-out of the arbitration agreement, Plaintiff was directed to mail her opt-out to "H&R Block-Legal Department" in Kansas City, Missouri. Doc. #21-2, at 6; Doc. #21-3, at 7. Finally, at the top of the first page of each agreement appears "H&R

9

Block®" next to a black square (likely the green square typically accompanying "H&R Block"). Doc. #21-2, at 2; Doc. #21-3, at 2.

Defendants may not have been specifically identified in the agreements as "parents, subsidiaries, affiliates" of H&R Block Eastern Enterprises. But the agreements establish an irrefutable affiliation between Defendants and H&R Block Eastern Enterprises. Interestingly, in her Complaint, Plaintiff alleges she "worked as a seasonal tax preparer for H&R Block," specifically referring to Defendants as "H&R Block." Doc. #1, ¶ 6. She also contends H&R Block's direct and indirect subsidiaries (and other entities and individuals) conspired with Defendants "in the offenses alleged in this Complaint." *Id*. ¶ 9. Consequently, her Complaint reveals she was and is aware of H&R Block Eastern Enterprises's affiliation with Defendants. Thus, Defendants, although nonsignatories to the agreement, may compel arbitration.[5]

### C. Whether the Agreement Encompasses the Dispute

Having concluded a valid arbitration agreement exists, the Court must determine whether the claims in this lawsuit fall within the scope of the arbitration agreement. *See Pro Tech Indus.*, 377 F.3d at 871. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, including the construction of the contract language itself." *PRM Energy Sys.*, 592 F.3d at 836 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)) (internal quotations omitted). When determining whether the scope of the arbitration agreement includes the claims at issue, the Court does not consider the fact that Defendants are not parties to the agreement containing the clause. *CD Partners,* 424 F.3d at 801 n. 3.

Although Plaintiff does not address this particular issue in her briefing, the agreements provide the necessary information for the Court's analysis. That is, in both agreements, the parties agreed to arbitrate claims arising under federal statute. Doc.

---

[5] Plaintiff seems to suggest Defendants cannot compel arbitration on the basis of equitable estoppel because her claims are not intertwined with the agreement at issue. Doc. #36-1, at 5. The Court does not address this argument because (1) Defendants do not rely on equitable estoppel as a basis for compelling arbitration, and (2) Plaintiff expressly agreed to arbitrate her claims against Defendants, as explained *supra*.

#21-2, at 4-5; Doc. #21-3, at 5. Plaintiff's claims arise from the Sherman Act – specifically, 15 U.S.C. §§ 1, 3. Doc. #1. The arbitration agreements encompass Plaintiff's Sherman Act claims. Additionally, Plaintiff agreed to arbitrate her claims on an individual basis, and waived her right to arbitrate her claims on a class-wide basis. Doc. #21-2, at 5; Doc. #21-3, at 6. For all of the foregoing reasons, Defendants' motion to compel arbitration on an individual basis is granted.

### III. PLAINTIFF'S MOTION TO STRIKE OR FILE SUR-REPLY

Plaintiff moves to strike Defendants' reply because, according to her, the reply raised new arguments. Alternatively, Plaintiff asks for leave to file a sur-reply. Defendants contend no new arguments were raised in their reply brief, but they do not object to Plaintiff filing a sur-reply if the Court deems it appropriate. Doc. #37. Plaintiff did not file a reply in further support of her motion, and the time for doing so has passed. L.R. 7.0(c)(3). Plaintiff's motion for leave to strike Defendants' reply is denied, but her alternative request for leave to file a sur-reply is granted. The sur-reply attached to Plaintiff's motion (Doc. #36-1) was considered by the Court in ruling Defendants' motion to compel arbitration.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is granted, and Plaintiff's motion to strike or for leave to file sur-reply is granted in part and denied in part. The Court compels the parties to arbitrate the claims filed herein in accordance with the terms of the parties' arbitration agreements. This matter is stayed pending completion of arbitration, and the parties shall file a notice with the Court within ten days of the completion of arbitration. If arbitration is not completed by November 8, 2019, the parties shall jointly file a status report on that date setting forth the status of the matter.

IT IS SO ORDERED.

DATE: May 13, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT